# Exhibit
# A

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

William J. McSorley, Sr..
Individually and as Administrator of the
Estate of Carole Ann McSorley

v. CA NO. 07-52ML

United States of America, et als

PRETRIAL ORDER

Pursuant to Rule 16 of the Federal Rules of Civil Procedure, it is ordered that all discovery will be closed by **November 17, 2008**. Plaintiff shall make its expert witness disclosures as required by F.R.Civ.P. 26(a)(2) by **November 15, 2007**. Defendant shall make its expert witness disclosures as required by F.R.Civ.P. 26(a)(2) by **May 15, 2008**. Dispositive motions shall be filed by **November 29, 2008**.

Counsel shall file **electronically**, 30 days after a decision on any dispositive motion, or, if no dispositive motions are filed, by **December 17, 2008** a memorandum which shall contain the following information:

1. (a) Plaintiff will set forth what is expected to be proven in support of the claim.

1. (b) Defendant will set forth what is expected to be proven in defense.

2. A memorandum of supporting law with citations of authorities. This is to include all the law applicable to the case with emphasis on special legal issues. All pertinent citations will be fully briefed.

3. A statement as to probable length of trial.

At least **10 days** before jury selection, or, in the case of a matter to be tried without a jury, **10 days** before trial is to begin, counsel shall submit to the court in **conventional form (paper)** the following:

1. A list of all witnesses expected to testify with a brief summary of each witness's testimony and a statement as to whether that witness will testify as an expert.

2. A list of all exhibits intended to be offered at the trial with statements of the purpose for which the exhibit is offered. All exhibits will be pre-marked by the plaintiff in numerical order and by the defendant in alphabetical order.

3. If the case is to be tried before a jury, full and complete proposed jury instructions.

Failure to strictly comply with this order will result in appropriate sanctions which may include dismissal, default, or exclusion of evidence.

After 10 days from the close of discovery, no motions shall be filed except by leave of the undersigned; the case is subject to being called for trial on 48-hour notice, unless otherwise ordered by the undersigned.

Every effort should be made to settle the case before jurors are summoned for impanelment. **Counsel are to advise the clerk of any such settlement and file a stipulation of dismissal no later than 7 days before the scheduled impanelment date.** Jury costs and/or counsel fees may be assessed against one or more of the parties and/or their counsel if the court determines that the lateness of settlement was due to unreasonable or vexatious conduct or neglect.

SO ORDERED:

Mary M. Lisi
Mary M. Lisi
Chief United States District Judge
May 15, 2007

Entered as an Order of this Court on May 16, 2007.

Barbara Barletta
Deputy Clerk

# Exhibit
# B

7/2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

WILLIAM J. MCSORLEY, SR., Individually
And as Administrator of the Estate of
CAROLE ANN MCSORLEY

v. C.A. NO. 07-052ML

UNITED STATES OF AMERICA,
KEVIN S. PALUMBO, M.D., alias,
THEODORE C. PALUMBO, M.D., alias,
THEODORE C. PALUMBO, M.D., INC., alias,
UNIVERSITY GASTROENTEROLOGY, INC., alias,
ROBERT D. SIDMAN, M.D., alias,
UNIVERSITY EMERGENCY MEDICINE
FOUNDATION, alias, and RHODE ISLAND
HOSPITAL, alias

**PLAINTIFF, WILLIAM J. MCSORLEY, SR.'S, AS ADMINISTRATOR OF THE ESTATE OF CAROLE ANN MCSORLEY, ANSWERS TO DEFENDANT THEODORE C. PALUMBO, M.D.'S INTERROGATORIES**

1. Please identify Carole Ann McSorley fully, giving her full name, date of birth, social security number, residence address, and business address, and occupation.

**ANSWER:** Carole Ann McSorley; 10/11/44; 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; remainder of interrogatory not applicable.

2. Please describe Carole Ann McSorley's educational background, stating the name, location, and dates of attendance at each educational institution, a description of her course of studies, and the degree, honors, or other recognitions, if any, she received.

**ANSWER:** Graduate of Warwick Vets Sr. High School (1963); banking/finance courses at CCRI (around 1972 – 1973).

3. Please describe Carole Ann McSorley's complete employment history since graduating from high school, stating as to each job:

a) the dates of her employment;
b) the name and address of her employer;
c) her job title;
d) a description of her job responsibilities;

e) her hourly, weekly or monthly rate of compensation; the average number of hours per week she worked; and her reason for leaving each job.

**ANSWER:** Plaintiff objects to this interrogatory on the grounds that it is overly broad in time and scope, and seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, and answering as to ten years, plaintiff is not making a loss of wages or earning capacity claim. Carole created jewelry business called Jaima Christa, Ltd. where she designed jewelry, then after a few years opened a store called Alyssa's Craftmania; after a few years sold that business, and did miscellaneous crocheting and knitting pocketbooks; also sewing instructor at RA Yarns for a short period of time in 2004;

4. Please describe Carole Ann McSorley's residential history for the past ten years, indicating with respect to each such residence:

a) the address;
b) the dates during which she resided at each address;
c) the names of any other persons who resided with her at each address.

**ANSWER:** 139 Overbrook Avenue, Warwick, Rhode Island; William J. McSorley, Sr., and Patricia Allen.

5. Please state for each and every occasion on which Carole Ann McSorley was married:

a) her spouse's name;
b) the date and place of her marriage;
c) the names and dates of birth of any children of that marriage;
d) the date, location and reason for the termination, if any, of the marriage, including the court and docket number of any divorce or separation proceedings.

**ANSWER:** William J. McSorley, Sr., date of marriage: 6/19/65 in Warwick, RI; Married to William J. McSorley, Sr.; One son: William J. McSorley, Jr., D.O.B. 10/21/66; Maiden name: Badmington. Our marriage was terminated by Carole's death on September 6, 2004.

6. If Carole Ann McSorley ever underwent or received any treatment for any mental or emotional disturbance, please state as to each such mental or emotional disturbance:

a) the nature of the mental or emotional disturbance;
b) the nature and extent of the treatment; and
c) the names and addresses of each doctor, practitioner, counselor, hospital, clinic or institution treating Carole Ann McSorley.

**ANSWER:** Plaintiff objects to this interrogatory on the grounds that it is overly broad, specifically as to the term "mental or emotional disturbance" and that it is unlimited in time. Plaintiff further objects as it seeks information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, and

answering as to ten (10) years: plaintiff received treatment for anxiety from 3/6/02 – 8/30/04 at the Newport Naval Mental Health Clinic and was treated there by Holly Phillips and Dr. Shipley, and one other physician whose name I do not recall. Pursuant to Rule 33(d) of the Rules of Civil Procedure, plaintiff refers this defendant to the records.

7. If you or Carole Ann McSorley participated in or overheard any conversations involving any representative of any defendant concerning the alleged occurrence, please state as to each such conversation:

a) the name and address of each person involved in the conversation;
b) the date, time and place of the conversation; and
c) the content or substance of the conversation indicating who said what to whom.

**ANSWER:** When Carole was going for her colonoscopy by Dr. Palumbo, he informed us of a risk of rupture. After the colonoscopy he told me and Carole that she had diverticulosis, which could turn into diverticulitis, which could cause a rupture, and that "we" (which I understood to be the doctor) would have to keep a close watch on her. Following this, Carole called her cousin, Patricia Allen, and told her what Dr. Palumbo said. Dr. Palumbo prescribed Nexium which he said would make Carole feel better. I recall saying to both Dr. Tomlinson and Dr. Palumbo that a person does not lose the amount of weight Carole lost without something being wrong. I remember Dr. Tomlinson replying, "Well she's not eating," at which time he referred her to a nutritionist. I recall on August 28, 2004, at Rhode Island Hospital, the emergency room physician listening to Carole's abdomen and stating that she had a lot of activity. I remember that shift change occurred while she was there, and the doctor told another doctor that, "She's just got IBS – we're just going to give her some fluids." Also, I remember the doctor speaking with Dr. Palumbo's brother, and the doctor said Dr. Palumbo said, "Just tell her to take Pepto Bismol." On August 31, 2004, when we walked into Dr. Palumbo's office and demanded to see him, he told us that he had seen the ultrasound results and everything was normal. He gave us a follow up appointment for September 27, 2004. He also called Rhode Island Hospital and scheduled a CT Scan for Carole for September 3, 2004. On September 3, 2004, when we went to Rhode Island Hospital for Carole's CT scan, we were told they could not do the CT Scan as Carole did not have the barium liquid or preparation to have the CT Scan. Dr. Palumbo had not provided us with any instructions or the barium liquid. They called Dr. Palumbo's office, rescheduled the CT Scan for September 10, 2004, and gave Carole a brown bag with the liquid Carole was supposed to drink before the procedure. Following this, I called Dr. Palumbo's office (on September 3, 2004), and told the receptionist Carole needed to be seen. The receptionist called me back and told me that as it was the Friday before Labor Day, Carole could not be seen, that Dr. Palumbo had already gone for the weekend, but that he had called in and said that if Carole got worse, to go to the emergency room. However, the state of pain and distress Carole had been in throughout this time had become constant for her. After Carole's death, I went to Dr. Palumbo's office to get a copy of her records. The receptionist told me I could not get the records without Carole's signature. When I told her she had died, she told me to come back in two hours, that she would have the records ready for me. When I returned, she told me that she could not give them to me as Dr. Palumbo had them with him. A week or so later I got the records, and they had a copy of someone else's ultrasound in them, which I returned to Dr. Palumbo's office. Also, I called an ultrasound place to get a copy of Carole's ultrasound, it was the wrong place, but they told me, "It's funny, Dr. Palumbo's office called looking for the same report, it wasn't done here."

8. Please describe in complete detail the specific conduct by this defendant that the estate believe was in breach of the standard of care, including, without limitation, the dates on which Carole Ann McSorley was treated by this defendant, the care given to Carole Ann McSorley by this defendant, the date or dates on which the estate began to suspect that she suffered harm as a result of this defendant's care, and what harm, if any, the estate believes she suffered as a result of this defendant's care.

**ANSWER:** Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, requires the opinions of experts, and plaintiff cannot give a complete answer to this interrogatory as discovery has not progressed in this matter. Without waiving this objection, and answering as a layperson: Theodore Palumbo, M.D., is negligent in his failure to examine the plaintiff's decedent at Rhode Island Hospital on August 28, 2004, in his failure to treat plaintiff's decedent emergently with a stat CT scan, stat bloodwork, and/or stat surgical consult, and/or his negligent failure to admit Carole McSorley to the hospital to rule out life-threatening disease. He is further negligent in recommending that plaintiff's decedent be discharged from the hospital with a diagnosis of IBS and instructions for her to take Pepto Bismol, as well as his negligent failure to follow up with plaintiff's decedent. Additionally, please refer to plaintiff's answer to Interrogatory No. 13. Plaintiff reserves the right to supplement this answer in accordance with the Rules of Civil Procedure.

9. Please state all facts upon which you base the estate's claim that the conduct of each defendant caused or contributed to some injury to Carole Ann McSorley.

**ANSWER:** Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, requires the opinions of experts, and plaintiff cannot give a complete answer to this interrogatory as discovery has not progressed in this matter. Without waiving this objection, and answering as a layperson:

University Gastroenterology was negligent under the doctrine of respondeat superior as to Kevin Palumbo, M.D. and Theodore Palumbo, M.D.

Kevin Palumbo, M.D., is negligent in his failure to recognize the signs and symptoms of diverticulitis, failure to determine the cause of Carole McSorley's significant weight loss, in his failure to rule out diverticulitis or other life-threatening disease with appropriate testing, and in his failure to treat plaintiff's decedent emergently with a stat CT scan, stat bloodwork, stat surgical consult, and/or hospitalization to rule out life-threatening disease.

Robert Sidman, M.D., is negligent during the August 28, 2004 emergency department visit and in his failure to recognize the signs and symptoms of diverticulitis, his failure to treat plaintiff's decedent emergently with a stat CT scan, stat surgical consult, his negligent failure to interpret correctly the bloodwork done on August 28, 2004, and his negligent failure to admit plaintiff's decedent to the hospital for further work-up.

Rhode Island Hospital and University Emergency Medicine Foundation are negligent

under the doctrine of respondeat superior for the negligence of Dr. Sidman and their agents, servants and employees.

United States of America is negligent under the doctrine of respondeat superior for the negligence of Dr. Tomlinson and Kristen Fielding, which negligence includes but is not limited to: failure to appropriately coordinate Carole McSorley's care; his failure to recognize the signs and symptoms of diverticulitis, failure to determine the cause of Carole McSorley's significant weight loss, in his failure to rule out diverticulitis or other life-threatening disease with appropriate testing, failure to treat plaintiff's decedent emergently with a stat CT scan, stat surgical consult, and blood work; and his negligent failure to admit plaintiff's decedent to a hospital for further work-up.

Additionally, please refer to plaintiff's answer to Interrogatory No. 13. Plaintiff reserves the right to supplement this answer in accordance with the Rules of Civil Procedure.

10. Please state the name, current address or location of each person who was a witness to or has any knowledge of, any occurrence, event, fact, circumstance or discoverable matters upon which your claim is based or founded, specifying to what occurrence, event, fact, circumstance or discoverable matters each such person was a witness or had knowledge.

**ANSWER:** Plaintiff objects to this interrogatory on the grounds that it seeks information protected from disclosure by the work product doctrine and seeks work done in anticipation of and in preparation for litigation and otherwise infringes upon the attorney client privilege. Without waiving this objection, and answering as to non-privileged information: myself and my attorneys; the defendants, their insurers, their attorneys, my attorneys, the experts listed in my answer to the preceding interrogatory, all persons listed in the medical records; Holly Phillips, psychologist at the Naval Ambulatory Care Center, as well as her predecessors, Dr. Shipley and another doctor whose name I do not recall; Dr. Hookman and Dr. Feldman (see plaintiff's answer to Interrogatory No. 13 for further identification); friends and family who were aware of the state of Carole's health, as well as her appearance and weight loss: William J. McSorley, Jr., 104 Haswell Street, Warwick, RI 02889; Patricia Allen (Carole's cousin), 139 Overbrook Avenue, Warwick, RI, 02889; Father Burt Anderson, Saint Rita Church, Oakland Beach, Warwick, RI; and Sjoberg and Votta, 200 Centerville Rd., Warwick, RI 02886.

Plaintiff reserves the right to supplement this answer in accordance with the Rules of Civil Procedure.

11. If Carole Ann McSorley was afflicted with or suffered from any medical condition, injury, illness or disability, including the injury alleged in this case, or suffered during the ten years prior to the alleged occurrence or since the time of the alleged occurrence, please state:

a) a full and complete description of any such condition, including its nature, extent and severity;
b) the duration of time, in months and days, that she had any such condition prior to the

alleged occurrence;

c) the nature and extent of any treatment or care she received for any such condition;

d) the names and addresses of any doctor or hospital involved with any examination, treatment, or care of any such condition; and the dates of each and every such examination, treatment or care for any such condition.

**ANSWER:** Plaintiff objects to this interrogatory on the grounds that it is overly broad and seeks information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection: Carole was diagnosed with Irritable Bowel Syndrome and was being treated for this by Dr. Palumbo and Dr. Tomlinson. According to the 1/21/04 Discharge Instructions by Dr. Palumbo, she was also diagnosed with gastritis/esophagitis and was told by Dr. Palumbo that she had diverticulosis. Additionally, Carole was being followed by the Newport Ambulatory Care Center for hypertension. In further answering this interrogatory, and pursuant to Rule 33(d) of the Rules of Civil Procedure, please refer to the medical records.

12. Please give an account, itemized as fully and as carefully as you can, of all losses and expenses which you claim were incurred by Carole Ann McSorley or her estate as a result of the alleged occurrence stating in your answer those losses or expenses which are attributable to hospitals, doctors, nursing, medicines, medical appliances, lost wages, loss of earning capacity, funeral expenses, or any other form of special damages.

**ANSWER:** Plaintiff is not yet in possession of all of the medical bills in this matter. Plaintiff is in possession of the following:

| | | Insurance | Co-payment |
|---|---|---|---|
| a. | Quest Diagnostics | | |
| | 9/3/04 | $86.82 | |
| | 1/9/04 | $93.61 | |
| | 1/8/04 | $93.61 | |
| | 1/7/04 | $93.61 | |
| | 12/18/03 | $58.67 | |
| b. | Rhode Island Medical Imaging | | |
| | 8/31/04 | $32.36 | |
| c. | Rhode Island Hospital | | |
| | 8/31/04 | $58.87 | |
| | 8/28/04 | $920.57 | $30.00 |
| d. | University Emergency Medicine Foundation | | |
| | 8/31/04 | $97.41 | |
| e. | University Gastroenterology | | |
| | 8/31/04 | $83.49 | $12.00 |
| | 5/13/04 | $53.53 | $12.00 |
| | 1/21/04 | $346.56 | |

| | | | |
|---|---|---|---|
| | 1/14/04 | $494.27 | |
| | 12/18/03 | $155.83 | $15.00 |
| f. | Bayside Endoscopy | | |
| | 1/21/04 | $418.70 | $25.00 |
| | 1/14/04 | $519.00 | $25.00 |
| g. | GI Pathology | | |
| | 1/14/04 | $173.18 | |
| h. | CVS Pharmacy | | |

Additionally, plaintiff William J. McSorley, Sr., has a claim for loss of consortium and services of his decedent. Plaintiff estimates the value of the loss of the services of Carole Ann McSorley is approximately $240,000 and refers this defendant to the attached Preliminary Report by Allan M. Feldman, Ph.D. Additionally, Carole's funeral cost $7,340. Plaintiff reserves the right to supplement this answer in accordance with the Rules of Civil Procedure.

13. If the estate expects to call any expert witnesses at trial, please state for each such expert:

a) the expert's name, address and occupation;
b) the subject matter on which the expert is expected to testify;
c) the substance of all facts and opinions to which the expert is expected to testify; and
d) a summary of the grounds for each such opinion of the expert.

**ANSWER:**

Perry J. Hookman, M.D., Internal Medicine, Gastroenterology
Mount Sinai Medical Center
4300 Alton Road, Suite G-22
Miami Beach, FL 33140

Dr. Hookman is a licensed physician, licensed to practice in Florida, Maryland, Washington and Virginia, and is Board Certified in the fields of Internal Medicine and Gastroenterology. Dr. Hookman's following opinions are based on his review of the medical records, as well as his medical background, experience, expertise, education and training.

Dr. Hookman is expected to testify that if, as is stated in a letter dated August 31, 2004 by Dr. Kevin Palumbo, he found or was aware of colon diverticula as of January 14, 2004, in conjunction with Ms. McSorley's reported symptoms and findings, Dr. Palumbo should have then worked up and evaluated the patient to rule out diverticular disease, or treat it if it was confirmed, which he did not do. He certainly should have done that workup as of his visit with the patient on August 31, 2004. At that time, the workup should have included a stat CT scan, stat blood work, stat surgical consult, and/or hospitalization to rule out acute or complicated diverticulitis. The same is true of Dr. David Tomlinson from patient's visit of February 6, 2004

onward. In view of lab results obtained at Rhode Island Hospital on or about August 28, 2004, all of the treating doctors, including but not limited to Dr. Sidman and Dr. Theodore Palumbo, and the hospital should have made certain that a CT scan was performed stat and, assuming it confirmed the diagnosis of complicated diverticulitis, perforated colon or peritonitis (based on the autopsy report), initiated immediate antibiotic treatment by IV. Additionally, discharge from the hospital on that date without appropriate testing for diverticulitis, or immediate hospitalization with IV antibiotics and/or surgical consultation is a further breach of the standards of care.

Dr. Hookman's testimony is further anticipated to include that the treatment rendered to Carole Ann McSorley by the defendants was negligent and fell below the applicable standard of care, and that the injuries, damages, conscious pain and suffering and ultimate death of Carole Ann McSorley were reasonably foreseeable and proximately caused by the negligence of the defendants.

Plaintiff reserves the right to supplement this opinion and answer as discovery progresses.

Allan M. Feldman, Ph.D., Economist
Dept. of Economics
Brown University
17 Irving Avenue
Providence, RI 02906

Pursuant to Rule 33(d) of the Rules of Civil Procedure, please refer to the attached Preliminary Report by Dr. Feldman.

Furthermore, plaintiff has made no decisions as to who will testify at trial.

14. Please describe in complete detail all payments that were received from any health care insurer or collateral source for treatment provided to Carole Ann McSorley, indicating with respect to each, the payor, the payee, the amount of payment, the date of payment and a brief description of the medical services for which payment was made.

**ANSWER:** This information is contained in my answer to Interrogatory No. 12. Tricare provided the health coverage.

15. Identify any and all learned or authoritative treatises or other items the estate intends to use or rely upon at trial and, in doing so, specify the book, journal, or other publication, together with dates and pages of such publications upon which reliance will be placed.

**ANSWER:** None at this time. Plaintiff reserves the right to supplement this answer in accordance with the Rules of Civil Procedure, and R.I.G.L. 9-19-30.

16. Please describe in complete detail all other claims, demands or lawsuits that Carole Ann

McSorley has brought against any person or entity for personal injuries of any sort within the last ten (10) years, indicating in your answer the parties to the claim or lawsuit, the nature of the claim, the injuries and damages for which compensation was sought, and the outcome or resolution of the claim or lawsuit.

**ANSWER:** None.

17. Please identify all diaries, journals, notebooks, calendars or other documents prepared by Carole Ann McSorley, which record, reflect or relate to the events at issue in this case.

**ANSWER:** Carole maintained a calendar for the year 2004.

18. For each occasion on which Carole Ann McSorleywas convicted and/or sentenced on conviction for a misdemeanor within the past five (5) years, or convicted and/ or sentenced on conviiction for a felony within the past ten (10) years, please state:

a) the nature of the crime of which Carole Ann McSorley was convicted;
b) the date of the conviction;
c) the court, title and docket number of each such conviction; and,
d) the sentence imposed.

**ANSWER:** Not applicable.

19. Please identify the court that appointed you as administrator of the estate of Carole Ann McSorley, including the docket number of the case, and the date on which your appointment was effective.

**ANSWER:** City of Warwick Probate Court, 1/20/06, No. 2006-23.

William J. McSorley SR

WILLIAM J. MCSORLEY, SR., as Administrator
of the Estate of Carole Ann McSorley

STATE OF RHODE ISLAND
PROVIDENCE, SC.

Subscribed and Sworn To, before me, on this 24th day of July, 2007.

NOTARY PUBLIC
My Commission Expires: 1/13/09

As to Objections,

Aram R. Schefrin (#2066)
Plaintiff's Attorney
LOVETT SCHEFRIN HARNETT
155 South Main Street
Providence, RI 02903
(401) 863-8800
(401) 863-8938 Fax
arams@adelphia.net

**CERTIFICATION**

I, the undersigned, hereby certify that I mailed a copy of the within, by first class mail, postage prepaid, on this 24th day of July, 2007, to the counsel of record:

Seth E. Bowerman, Esq.
Bowerman & TaylorGuertin
1 Turks Head Place, Suite 1300
Providence, RI 02903

Francis A. Connor, III, Esq.
Andrew C. Coulam, Esq.
Taylor, Duane, Barton & Gilman
10 Dorrance St., Ste. 700
Providence, RI 02903

Michael G. Sarli, Esq.
Gidley, Sarli & Marusak
1 Turks Head Place, Suite 900
Providence, RI 02903

William F. White, Esq.
White Carlin & Kelly
155 Westminster Street, 7th Floor
Providence, RI 02903

Richard Myrus, Esq.
Assistant United States Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

# Exhibit
# C

DEC 27 2007

COPY

**U.S. Department of Justice**

*United States Attorney*
*District of Rhode Island*

Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, Rhode Island 02903

(401) 709-5000
FAX (401) 709-5001
CIVIL FAX (401) 709-5017

December 26, 2007

**Via Facsimile and Regular Mail**

Aram R. Schefrin, Esq.
LOVETT SCHEFRIN HARNETT
155 South Main Street
Providence, RI 02903

Re: McSorley v. United States, et al., C.A. No. 07-052ML

Dear Aram:

Plaintiff inexplicably continues to flout the requirements that the Court and the Federal Rules of Civil Procedure have established regarding the disclosure of expert reports. Plaintiff recently produced Dr. Hookman's "notes," but not his expert report. It thus appears that your failure to provide his expert report by the November 15, 2007, deadline was not an oversight, but an effort to evade plaintiff's obligations regarding expert disclosures.

More than a month ago, I spoke by telephone with your paralegal, because you were unavailable, and requested that plaintiff immediately produce the reports of any experts upon whom plaintiff intends to rely in this case. Subsequently on December 20, 2007, I wrote to you and reiterated that the Court-ordered deadline for plaintiff to serve expert reports pursuant to Federal Rule of Civil Procedure 26 had passed. Rather than produce a report for Dr. Hookman, on December 21, 2007, you sent me documents that you characterize as "Dr. Hookman's notes on Carole McSorley." Plaintiff still has not requested an extension of the November 15, 2007 deadline, articulated any reason for failing to produce Dr. Hookman's report, or indicated that you have any intention of providing a report from him.

Plaintiff's cursory interrogatory response regarding Dr. Hookman and the recent production of notes "does not come within a country mile of satisfying the requirements of either the case-management order or Rule 26(a)(2)(B)." Santiago-Diaz v. Laboratorio Clinico y De Referencia Del Este, 456 F. 3d 272, 277 (1st Cir. 2006). The Federal Rules require that plaintiff disclose the identity of any expert who may be used at trial, and this disclosure must be

accompanied by a written report prepared and signed by the witness. Fed. R. Civ. 26(a)(2)(B). Rule 26 provides that

> the report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Id.

Plaintiff has articulated no justification for plaintiff's intentional, unexcused failure to provide Dr. Hookman's expert report. Indeed, plaintiff had more than six months prior to the deadline to conduct any necessary discovery. Moreover, the United States has been prejudiced by plaintiff's decision to withhold a full statement of Dr. Hookman's opinions and whatever support he purports to have for them. Alves v. Mazda Motor of America, Inc., 448 F. Supp.2d 285, 293-94 (D. Mass. 2006). Therefore, please advise me whether or not plaintiff still intends to rely on Dr. Hookman as a testifying expert, and if so, explain plaintiff's basis for failing to furnish his expert report.

Very truly yours,

ROBERT CLARK CORRENTE
United States Attorney

[signature]

RICHARD B. MYRUS
Assistant U.S. Attorney

RBM/nad

cc: Andrew C. Coulam, Esq.
Michael G. Sarli, Esq.
William F. White, Esq.
Seth E. Bowerman, Esq.

# Exhibit
# D

DEC 0 4 2007

WCK

WHITE, CARLIN & KELLY, P.C.
ATTORNEYS AT LAW

155 WESTMINSTER STREET, 7TH FLOOR • WESTMINSTER SQUARE BUILDING • PROVIDENCE, RHODE ISLAND 02903
TELEPHONE (401) 273-1400 • FAX (401) 273-1177 • E-MAIL WCKmail@wck-law.com

WILLIAM F. WHITE, ESQ.
Also admitted in Mass. & Wyoming
JOSHUA E. CARLIN, ESQ.
Also admitted in Mass.
MATTHEW D. KELLY, ESQ.
DOROTHEA R. CALVANO, ESQ.
COREY J. ALLARD, ESQ.
Also admitted in Conn.

Monday, 3 December 2007

**CONFIDENTIAL-*ATTORNEY WORK PRODUCT***

Aram R. Schefrin, Esq.
Lovett, Schefrin & Harnett
155 South Main St.
Providence, RI 02903

***Sent via Fax & U.S. Mail***

RE: ***McSorley v. University Gastroenterology, Inc.***
Our File No.: 0890-47N
Expert Disclosure

Dear Mr. Schefrin:

A review of this file reveals that Plaintiff's expert disclosure was due November 15, 2007 per Judge Lisi's scheduling order. You identified Perry J. Hookman, M.D. and Allan M. Feldman in plaintiff's initial answers to interrogatories propounded by University Gastroenterology, Inc. To this date, there has been no additional expert disclosure. Inasmuch as the time for disclosure has come and gone, I trust you do not intend to identify any other experts.

Sincerely,

Corey J. Allard

Corey J. Allard
for William F. White

cc: Seth E. Bowerman, Esq.
Francis A. Connor III, Esq.
Richard B. Myrus, Esq.
Michael G. Sarli, Esq.

0890.lcas.2

# Exhibit
# E

DEC 21 200

COPY

**U.S. Department of Justice**

*United States Attorney*
*District of Rhode Island*

Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, Rhode Island 02903

(401) 709-5000
FAX (401) 709-5001
CIVIL FAX (401) 709-5017

December 20, 2007

Via Facsimile and Regular Mail
Aram R. Schefrin, Esq.
LOVETT SCHEFRIN HARNETT
155 South Main Street
Providence, RI 02903

Re: McSorley v. United States, et al., C.A. No. 07-052ML

Dear Aram:

I write regarding plaintiff's responses to the United States' requests for the production of documents. Plaintiff's refusal to produce documents in response to numerous legitimate requests by the United States is unjustified as addressed below.

(1) Requests Nos. 1, 3, 6-10

Plaintiff has refused to produce any documents in response to Nos. 1, 3, 6-10 on the ground that these requests seek materials protected by the work-product doctrine or the attorney-client privilege. The United States does not seek the production of privileged or otherwise protected documents. Plaintiff, however, is not relieved of its obligation to produce unprivileged, responsive documents merely because plaintiff contends that certain other documents may be immune from discovery. Plaintiff most either agree to produce all responsive, unprivileged documents promptly or explain its refusal to do so.

(2) Requests Nos. 11-13

Nos. 11-13 seek documents concerning Carol McSorley's medical history. For example, No. 12 calls for documents related to any medical practitioners, hospitals or clinics that Ms. McSorley visited regarding any medical condition for which she also was treated by representatives of the Navy. Plaintiff has no good faith basis for refusing to provide these documents. The United States is entitled to know whether, and how, Ms. McSorley was diagnosed and treated by others for conditions related in any way to the treatment at issue in this case. To eliminate any concerns that you may have over the temporal scope of these requests, we will agree to limit them to documents created within seven years prior to Ms. McSorley's death.

Please let me know if this proposal is acceptable, or whether it will be necessary to raise this matter with the Court.

(3) Requests Nos. 16-17

The Court-ordered deadline for plaintiff to serve expert reports under Fed. R. Civ. P. 26(a)(2) was November 15, 2007. Plaintiff has not provided the United States with any expert reports, and plaintiff never sought an enlargement of time from the Court in which to do so. Therefore, plaintiff is precluded from offering the testimony of any expert in this matter.

(4) Request No. 24

No. 24 seeks all written standards of care that you contend were violated by the Navy in treating Ms. McSorley. Your objection erroneously refers to "this interrogatory" and is unfounded. Moreover, R.I.G.L. 9-19-30 has no application to this lawsuit. If plaintiff is aware of any relevant, written standard of care, plaintiff must produce it.

I look forward to receiving your response to this letter by January 11, 2008. In addition, I will provide you with proposed dates for Dr. Tomlinson's deposition shortly.

Very truly yours,

ROBERT CLARK CORRENTE
United States Attorney

RICHARD B. MYRUS
Assistant U.S. Attorney

RBM/nad

cc: Andrew C. Coulam, Esq.
Michael G. Sarli, Esq.
William F. White, Esq.
Seth E. Bowerman, Esq.

# Exhibit F

TAYLOR
DUANE
BARTON&
GILMANLLP
ATTORNEYS AT LAW

Writer's E-Mail Address:
acoulam@taylorduane.com

December 21, 2007

**Via U.S. Mail and Facsimile (401-863-8938)**

Aram R. Schefrin, Esq.
Lovett Schefrin Harnett
155 South Main Street
Providence, RI 02903

Re: William J. McSorley, Sr. v. Kevin S. Palumbo, M.D., et al.
U.S.D.C. for the District of Rhode Island, C.A. No. 07-052ML

Dear Attorney Schefrin:

As you know, we represent the defendants, Theodore C. Palumbo, M.D. and Theodore C. Palumbo, M.D., Inc. the above matter. We write to avoid unnecessary motion practice and to request the written report of the plaintiff's medical expert, Dr. Perry Hookman, which should have already been produced to the defendants per the Court's Pretrial Order.

Please immediately produce Dr. Hookman's written report in accordance with Federal Rule of Civil Procedure 26(a)(2)(B).

Very truly yours,

Andrew C. Coulam

ACC/

cc: William F. White, Esq. (via U.S. mail only)
Seth E. Bowerman, Esq. (via U.S. mail only)
Michael G. Sarli, Esq. (via U.S. mail only)
Richard B. Myrus, Esq. (via U.S. mail only)

306777

BOSTON
160 FEDERAL STREET · BOSTON · MA · 02110 PHONE 617.654.8200 FAX 617.482.5350
PROVIDENCE
10 DORRANCE STREET · PROVIDENCE · RI · 02903 PHONE 401.273.7171 FAX 401.273.2904

# Exhibit G

DEC 26 2007

LOVETT
SCHEFRIN
HARNETT
*Attorneys & Counsellors at Law*

Raul L. Lovett, 1934-1990
Aram R. Schefrin
John M. Harnett*†

Warren R. Wolf
Carl J. Asprinio
Christopher M. Rawson*

*Member Rhode Island and Massachusetts Bar

†Member New York Bar

155 South Main Street
Providence, RI 02903
Tel: 401/863-8800
Fax: 401/863-8938
Mass: 800/451-1602

December 21, 2007

Richard B. Myrus, Esq.
Assistant U.S. Attorney
U.S. Dept. of Justice
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

RE: McSorley v. U.S. et al., C.A. No. 07-052ML

Dear Rick:

Enclosed please find Dr. Hookman's notes on Carol McSorley. Please let me know if you have any questions.

Very truly yours,

Aram R. Schefrin

Aram R. Schefrin, Esq.

ARS:jw

Enclosure

cc: Andrew C. Coulam, Esq. ✓
Michael G. Sarli, Esq.
William F. White, Esq.
Seth E. Bowerman, Esq.

NOTES ON CAROLE MCSORLEY

MEDICAL SHORT SUMMARY NOTES:

Ms. McSorley [the patient] was 59 y.o. white female with symptoms of chronic diarrhea, abdominal pain and intermittent nausea. She died at home 9/6/04 w post mortem dx. diverticulitis with fecal peritonitis due to R diverticular perforation [5-6 inches distal to ic jnct] + sealing of fibrinous adhesions[showing chronic-not acute] age of perforation] + ASHD [3 vessel disease].

Trt rendered previously by pmd david tomlinson MD @ Newport Naval Center for hypertension, IBS, diverticulosis, GERD, panic attacks, anxiety.
On 10/31/03 wt-122.Change in meds because of "abd pain/constip"
On 11/10/03 symptoms: p.c. vomiting; left abd pain.went to er but left w/o wkp.
On 11/20/03 symptoms abd pain, nausea, diarrhea. Referred by Dr. Tomlinson for GI consultation to Dr.Kevin Palumbo
On 12/18/03 had GI consultation with gastroenterologist Kevin S. Palumbo MD.
In his report to Dr. Tomlinson he wrote:
"Ms McSorley [the patient] was 59 y.o. white female with symptoms of chronic diarrhea, abdominal pain and intermittent nausea. wt= 117
... has intermittent abdominal pain in the mid epigastric area radiating to the umbilicus with associated nausea and vomiting."
...Lost about 5# ["intentional"]".
He scheduled a screening colonoscopy [because of + family hx colon ca], stool studies, blood lab tests. EGD showed reflux esophagitis.
Dr. K. Palumbo ordered an IBS regimen of diet, increased water intake, fiber and Bentyl. On colonoscopy he found "aphthoid" ulcers in ileum and right colon. He also noted colon diverticula in his 8/31 written report. Also in the 8/31/04 Palumbo's ov written notes he documents that the patient lost 20 # from "her last visit "abd exam + tenderness, diffuse greatest in lower quadrants. diff.dx gastroenteritis; diverticulitis.

On 5/13/04 she had a follow-up evaluation with Dr. Palumbo according to his 8/31/04 letter to Dr. Tomlinson. No further details seen on review.

Dr. Palumbo wrote in his 8/31/04 report to Dr. Tomlinson that the patient developed increased stool frequency 2 weeks ago [~8/15/04] with urgency, increased nausea/vomiting, increased crampy, sharp, abdominal pain "lasting longer than previous" symptoms. He goes on to state that this last episode "prompted an E.R. visit on 8/28/04." ...where she was treated with IV fluids pain medication and Reglan.
"Per record", he states "she has lost 20 #, with a fever of 100.2" In his physical exam he writes that her weight [on 8/31] was 96 ½ # which was"significantly decreased from the 5/4 116 #".
He did not immediately hospitalize the patient.
THIS WAS A MAJOR DSOC

On 9/6/04 the patient died.
@ death wt =87

CHRONOLOGY & COMMENTS:

On 2/23/90 seen at naval center. First Report documented of RLQ abdom pain 1x/week. Phys exam showed RLQ tenderness. Thought to be gyn-adnexal related.

No further wkp till 4/5/02 reviewed.

On 4/5/02 seen at naval center – first mention of "frequent loose stools for 1 year"

On 1/31/03 seen at naval center first mention of "IBS stable." Do not see any prior wkp for IBS to differentiate it from other abdominal syndromes.

On 9/30/03 seen at naval center: wt=124#. Hx of continued panic attacks;
"Diarrhea for past 3 years" attributed to anti-hypertension medication –atenelol [not IBS]

On 11/10/03 seen @ Naval Center having "been bedridden since Friday"…with abdominal pain, nausea and vomiting. Instructed to go to the nearest ER "since this problem is getting progressively worse"
This is a red flag or alarm symptom for which the dx of ibs should not be made, or at least deferred till complete evaluation performed including CT scan to r.o. acute &/or complicated diverticulitis.

Other complications of diverticulitis include development of an abscess or narrowing of the colon (stricture) or perforation. Treatment for diverticulitis (an inflamed or infected diverticulum) requires the use of antibiotics and frequently urgent hospitalization. Surgery may also be needed for cases that don't respond to medical management which includes antibiotics. A temporary colostomy may be required during surgery for complicated diverticulitis with infection, abscess or perforation as developed in Ms. McSorley.

On 11/20/03 symptoms of abd pain, nausea, diarrhea prompted referral by Dr. Tomlinson for GI Consultation to Dr.Kevin Palumbo which was performed on 12/18/03. In his report to Dr. Tomlinson he wrote:
"Ms McSorley [the patient] is a 59 y.o. white female with symptoms of chronic diarrhea, abdominal pain and intermittent nausea. wt= 117……Lost about 5# ["intentional"]". Abdominal pain is in the mid epigastric area radiating to the umbilicus with associated nausea and vomiting."
His workup included a screening colonoscopy[because of + family hx colon ca], stool studies, blood lab tests. An EGD showed reflux esophagitis.
On Colonoscopy he found "aphthoid" ulcers in ileum and right colon. He also noted colon diverticula in this 1/14/04 written report [of 8/31]

Despite the fact that in the 8/31/04 Palumbo's ov written notes he documents that the patient lost 20 # from "her last visit+ "abd exam shows tenderness, diffuse greatest in lower quadrants. diff.dx "gastroenteritis; diverticulitis he does not act to evaluate the diagnosis of diverticular disease and how it relates to "IBS" either in Jan 2004 or even in August 2004, which is the standard of care.

Furthermore in situations where the diagnosis of acute colonic diverticulitis is uncertain, limited flexible sigmoidoscopy with minimum insufflation of air may be performed to exclude other diagnoses.

Colonoscopy is usually avoided in the setting of acute diverticulitis (30) because of the risk of perforating the inflamed colon, either with the instrument itself or by insufflation of air.

On 2/6/04 according to the Naval OPD Nutritionist there is a medical note that the patient had a 15# weight loss in the past 3 months [starting ~12/6/03]

This is just a short time from the 12/18/04 GI consultation and only 3 weeks later than the colonoscopy with Dr. Palumbo- and still there is no appropriate workup for any red flag.

On 2/19/04 wt=111 @ naval hosp ov. "loss of 6# since dec.-Newport Naval Fam Pract Clinic dx: IBS; Diverticulosis .

Diverticulosis/diverticulitis was thus part of the differential and working diagnoses as early [if not earlier than 2/19/04].

On 2/26/04 According to nutrition consultation daily diarrhea[3-6x] symptoms vomited every month

RED FLAG

This is a red flag or alarm symptom for which the dx of ibs should not be made, or at least deferred till complete evaluation performed including CT scan to r.o. acute &/or complicated diverticulitis or any other abdominal disorder.

On 3/2/04 According to Tomlinson ov NOTE stated Endoscopy-Dx. gastritis,gerd. "2004 colonoscopy wnl;-diverticulitis" **Diverticulitis was thus part of the differential and working diagnoses early in the disease progression of Ms McSorley.**

Diverticulitis is an inflammation and/or infection of one of the diverticula. People with this complication characteristically present at different stages with:

Fever

Abdominal pain

Diarrhea and/or constipation

Decreased appetite and

Weight loss.

Other complications of diverticulitis include development of an abscess or narrowing of the colon (stricture) or perforation. Treatment for diverticulitis (an inflamed or infected diverticulum) requires the use of antibiotics and frequently hospitalization.

Surgery is needed for cases that don't respond to medical management and that's why surgical consultation is necessary early in the diagnosis. A temporary colostomy may be required during surgery for complicated diverticulitis with infection, abscess or perforation as developed in Ms. McSorley.

On 6/29/04 according to Dr.Fielding eval at naval hosp;-wt decreased to =107. [117-107=10#] +"anxiety dsrdr"
MAJOR RED FLAG
This is a red flag or alarm symptom for which the dx of ibs should not be made, or at least deferred till complete evaluation performed including CT scan to exclude Diverticulitis w or w/o complications.

On 8/18/04 According to DR. Tomlinson ov-evaluation for symptoms of abd pain wt=102.5"ibs, anx" gb us ordered[117-102= very significant weight loss of 15#]
MAJOR RED FLAG
This is a red flag or alarm symptom for which the dx of ibs should not be made, or at least deferred till complete evaluation performed including CT scan to r.o. acute &/or complicated diverticulitis or any other abdominal disorder.

On 8/28/04 RI HOSP ER @ noon for severe symptoms abd pain for 1 week [~8/18-21] p=89;
bp 155/84
At 2:45 symptoms According to hosp er mds"[abdominal] pain started 10 days ago [~8/18] when she was seen in Tomlinson o.v.
At @ 3:10 pm na=129; cl=89; wbc=13.3; neut=8.9; At @ 5:30 t=100.2 ox=97.6
THIS IS HYPONATREMIA; LEUKOCYTOSIS & FEVER:
MAJOR RED FLAGS
These symptoms and findings are red flags or alarm symptom for which the dx of ibs should not be made, or at least deferred till complete evaluation performed including CT scan to exclude Diverticulitis w or w/o complications or any other abdominal/pelvic disorders.

According to dr. Kevin Palumbo's gi brother Ted Palumbo informed er that she was being trt for IBS –then [o.k.'d ?] discharge w/o ct scan or kub.
THIS E.R. DISCHARGE PRIOR TO APPROPRIATE TESTING FOR ACUTE COMPLICATED DIVERTICULITIS &/OR IMMEDIATE HOSPITALIZATION &/OR SURGICAL CONSULTATION IS A MAJOR DSOC
The dx of ibs should not be made with these symptoms, or at least deferred till complete evaluation performed including CT scan to exclude Diverticulitis w or w/o complications.

On 8/30 her husband telephoned the Naval Center informing them that the abdominal cramping had returned after the 8/28 ER visit.
Dr.Tomlinson ,according to the records, simply verified that a nurse would return call. No immediate hospitalization recommended.
THIS IS A MAJOR DSOC
The dx of ibs should not be made with these symptoms, or at least deferred till complete evaluation performed including urgent CT scan + other diagnostic measures to exclude Diverticulitis w or w/o complications.

On 8/31/04 neg gb us
On 8/31/04 Palumbo ov
lost 20 # from "her last visit"abd exam + symptoms tenderness, diffuse greatest in lower quadrnts.diff.dx"gastroenteritis; diverticulitis.
blood wk ordred and finally a ct scan+sbft post ct scan.
THIS IS A MAJOR DSOC

The dx of ibs should not be made with these symptoms, or at least deferred till complete evaluation performed including CT scan.
The patient now needed urgent/ emergency CT scan]
20# wt. loss is a red flag or alarm symptom for which the dx of ibs should not be made, or at least deferred till complete evaluation performed including CT scan to r.o. abdominal infection/diverticulitis, complicated..

In his 8/28/04 note Dr. Palumbo documented in his note his recognition that "diverticulitis "is possible, [ because]"Colonoscopy showed a few left sided diverticula" [not mentioned in his transcribed January 2004 colonoscopy report but probably communicated to Dr. Tomlinson-see Tomlinson March 2004 note].
He then scheduled further lab work and a SBFT after review of CT scan.
On 8/31/04 Rhode Island Hospital Abd US
documented "history of intermittent colicky abdominal pain for the past several months. Patient has a history of diverticulosis."
US Showed only incidental finding of GB polyp.

On 9/3/04 Lab results: leukocytosis; increased absolute neutrophils; decr sod; CO2;
On 9/3/04 the patient had a scheduled elective [not emergency] CT scan
THIS IS A MAJOR DSOC
These are red flag or alarm symptom for which the dx of ibs should not be made, or at least deferred, till complete evaluation performed including urgent CT scan to r.o. acute &/or complicated diverticulitis or any other abdominal disorder.

Unfortunately CT scan was not done "because no contrast was ordered by Dr. Palumbo."
Thus rescheduled for 9/9
Called palumbo's office-told to go to er.lab wk reported
THIS IS A MAJOR DSOC
Urgent hospitalization + CT scan+ surgical consultation indicated to r.o. acute &/or complicated diverticulitis or any other abdominal disorder.

On 9/4 wbc=11.9,na=132;cl=89;co2=18;alb=2.9.
THIS DOCUMENTS THAT MS. MCSORLEY DEVELOPED ACIDOSIS; LEUKOCYTOSIS; HYPOALBUNINEMA :

THESE ARE MAJOR RED FLAGS

THIS IS A MAJOR DSOC
**Immediate hospitalization is necessary.**

On 9/6/04 died at home.@ death wt =87

DISCUSSION:

IBD DIAGNOSIS & TREATMENT ACCORDING TO STANDARD OF MEDICAL CARE [SOC]
from consensus documents and review of existing studies[see below].
The diagnosis of IBD is based on Symptom-based criteria — The safety and accuracy of making an IBS diagnosis based on the Manning &/or Rome II criteria has been the subject of a number of studies which have confirmed these criteria as accurate and correct in making a diagnosis of IBS anywhere from 65% to 100% of the time, again with strong reliance on the patient's symptoms <u>and with the absence of RED FLAGS OR ALARM SYMPTOMS.</u>
In addition to Physical examination and investigations — A medical history and physical examination, certain routine studies, are recommended to assess the presence of <u>"alarm signs" or "red flags" (</u>fever, weight loss, blood in stools, anemia, abnormal physical findings or blood studies, family history of IBD or cancer) that requires more extensive evaluation.
For ROUTINE screening purposes,
1. a stool Hemoccult and complete blood count.
2. A sedimentation rate
3. serum chemistries and
4. albumin, and
5. stool for ova and parasites (eg, predominant diarrhea, areas of endemic infection).

SOC:
<u>For patients with RED FLAGS [e.g.</u> abnormal stool Hemoccult; complete blood count; sedimentation rate ; serum chemistries; albumin, and weight loss ]

1. plain abdominal radiography [KUB] &/or CT Scan during an acute episode to exclude bowel obstruction and other abdominal pathology is recommended.
2. Imaging studies (eg, small bowel series) of the bowel and other evaluations based on changes in symptom type, or severity over time.

PEER REVIEW LITERATURE SUPPORT FOR MEDICAL OPINION & SOC:
Vanner et al [Vanner SJ; Depew WT; Paterson WG; DaCosta LR; Groll AG; Simon JB; Djurfeldt Predictive value of the Rome criteria for diagnosing the irritable bowel syndrome. *Am J Gastroenterol* 1999 Oct;94(10):2912-7.]
Writes about the predictive value of the Rome criteria and <u>absence of so-called "red flags"</u>.

The absence of red flags or alarm symptoms is crucial in clinical practice for diagnosing irritable bowel syndrome. In this retrospective series by Vanner et al, , the Rome criteria and absence of red flags had a sensitivity of 65%, specificity of 100%, and positive predictive value of 100%.
In the absence of red flags none of these patients required revision of their diagnosis [of IBS] during a 2-yr follow-up. In a prospective study, the positive predictive value was 98%.
These findings suggest that the Rome criteria combined with a lack of red flags have a very high predictive value for diagnosing irritable bowel syndrome; but with the presence of red flags one cannot diagnose IBS until other abdominal problems [e.g. diverticulitis; IBD; etc] are ruled out..

The medical records show that the diagnosis of diverticulosis/diverticulitis was entertained by the patient's health care providers as early as 2/19/04 @ The Newport Naval Fam Pract Clinic where the recorded working dx was : IBS; Diverticulosis . Diverticulosis/diverticulitis was thus part of the differential and working diagnoses as early [if not earlier than 2/19/04-perhaps seen on the missing or blurred/faded med records unavailable for my review].
The patient's weight then was 111. Also @ naval hosp ov. There was a recorded "loss of 6# since December".-

SOC:
Patients with the following red flag-alarm features [some of which were manifested by the patient] cannot be diagnosed as IBS unless other diagnoses are ruled out by thorough more complete evaluation.

Relevant Red flags needing more thorough evaluation are
1. relevant abnormalities on physical examination,
2. documented weight loss,
3. nocturnal symptoms,
4. blood in stools,
5. history of antibiotic use

SOC:
These Alarm features necessitates immediate work-up and evaluation with plain abdominal radiography [KUB] &/or CT Scan during an acute episode to exclude bowel obstruction, perforation, abscess, and other abdominal pathology.
Additional particularly significant alarm symptoms include
6..fever,
7.. leukocytosis,
8. anemia, and
9. hypoalbuminemia.

The patient had the following red flags:
RED FLAGS ; all documented on the 8/28 Rhode Island ER visit

SIGNIFICANT.WT LOSS.
DECR ALBUMIN;
HYPONATREMIA,
DEHDRATION..
INCREASED TEMP- FEVER;
INCR WBC, -NEUTROPHILS,

These alarm symptoms necessitate an evaluation for complicated [perforated] diverticulitis; or some other significant abdominal or pelvic pathology.

DSOC:
No immediate work-up and evaluation with plain abdominal radiography [KUB] &/or CT Scan during the acute episode to exclude bowel perforation and other abdominal pathology is a DSOC.

The SOC is
CT scan with contrast is the initial imaging test for patients with suspected diverticulitis, particularly when moderate severity disease or abscess is anticipated.
CT criteria for diagnosis of diverticulitis include colonic wall thickening, pericolic fat infiltration ("streaky" fat), pericolic or distant abscesses, and extraluminal air. Positive predictive value for diverticulitis by CT scan has been shown to be 73 percent for the presence of sigmoid diverticula, 88 percent for pericolic inflammation, 100 percent for wall thickness greater than 10 mm, and 85 percent for wall thickness of 7 to 10 mm.
The CT scan carries a sensitivity of 90 to 95 percent, a specificity of 72 percent.
CT has an advantage over contrast enema in that it is potentially both a diagnostic and therapeutic test.
In addition, abdom/pelvic CT scan can evaluate other organ systems.
Even up to 30 percent of patients with uncomplicated diverticulitis require surgical intervention during the initial attack. The goals of surgery are to remove the septic focus by resection of the colon, to treat obstruction, perforation or fistula, and to restore bowel continuity while minimizing morbidity and mortality.
Laparoscopic techniques are also possible for performing colonic resections in carefully selected patients since is associated with a shorter recovery time than traditional open approaches.
Complicated diverticulitis — Additional factors must be considered in patients with one of the complications of diverticulitis, such as perforation.&/or abscess formation as was the case with Ms.McSorley.

SOC for ACUTE/COMPLICATED DIVERTICULITIS:
1. Patients should receive antibiotics, a second or third generation cephalosporin or more broad-spectrum antibiotics. Examples of regimens are:
A. cefazolin (1 g IV every eight hours) plus metronidazole (500 mg IV every 8 hours);
B. ampicillin-sulbactam (1.5 g IV every six hours); or
C. ticarcillin-clavulanate (3.1 g IV every six hours). .

SOC FOR Ms McSorley:

1. Surgery — For Peritonitis — SOC mandates resuscitation, broad-spectrum antibiotics, and followed by emergency surgical exploration

REFERENCES FOR ABOVE:
[Smith TR, Cho KC, Morehouse HT, Kratka PS. Comparison of computed tomography and contrast enema evaluation of diverticulitis. Dis Colon Rectum 1990;33:1-6. Verbanck J, Lambrecht S, Rutgeerts L, et al. Can sonography diagnose acute colonic diverticulitis in patients with acute intestinal inflammation? A prospective study. J Clin Ultrasound 1989;17:661-6. Taylor KJ, Wasson JF, de Graaff C, Rosenfield AT, Andriole VT. Accuracy of grey scale ultrasound diagnosis of abdominal and pelvic abscesses in 220 patients, Veidenheimer MC, Roberts PL. Colonic diverticular disease. Boston: Blackwell Scientific, 1991. Deen KI, Madoff RD, Goldberg SM, Rothenberger DA. Surgical management of left colon obstruction: the University of Minnesota experience. J Am Coll Surg 1998;187:573-6. Sher ME, Agachan F, Bortul M, Nogueras JJ, Weiss EG, Wexner SD. Laparoscopic surgery for diverticulitis. Surg Endosc 1997;11:264-7. Bruce CJ, Coller JA, Murray JJ, Schoetz DJ, Roberts PL, Rusin LC. Laparoscopic resection for diverticular disease. Dis Colon Rectum 1996;39(Suppl):S1-6. ]

ANALYSIS:

DEVIATIONS IN THE STANDARD OF CARE [DSOC] .

1. IBS.[ROME] CRITERIA MET FOR RED FLAGS AND INCREASED INVESTIGATION INTENSITY.

THUS THE DX OF IBS SHOULD NOT BE MADE NOR TREATED TILL ACUTE DIVERICULITIS/COLON PERFORATION RULED OUT

EARLY RED FLAGS:

On 11/10/03 note from Naval Center having "been bedridden since Friday"...with "progressively worse abdominal pain, nausea and vomiting...[causing] "been bedridden since Friday"
On 2/6/04 note from Naval OPD Nutritionist commented that she had 15# weight loss in the past 3 months [thus weight loss starting ~12/6/03]
On 2/19/04 wt=111 @ Newport Naval Fam Pract Clinic dx: IBS; Diverticulosis . Diverticulosis/diverticulitis was thus part of the differential and working diagnoses as early [if not earlier than 2/19/04].
On 2/26/04 According to nutr cnsltn daily diarrhea[3-6x] symptoms vomited every month
On 6/29/04 according to Dr.Fielding eval at naval hosp;-wt decreased to =107. [117-107=10#]
On 8/18/04 According to DR. Tomlnson ov-evaluation for symptoms of abd pain wt=102.5 [117-102= very significant weight loss of 15#]

SOC FOR ALL THE ABOVE RED FLAGS ARE A CONTRAST ABDOMINAL/PELVIC CT SCAN IN ADDITION TO THOROUGH EVALUATION FOR DIAGNOSIS AND TREATMENT FOR DIVERTICULITIS.

IT IS INEXPLICABLE THAT WITH A WORKING DIAGNOSIS POSSIBILITY OF DIVERTICULITIS MADE AS EARLY AS 2/19/04 AND MARCH 2004, [OR EARLIER ON WHAT IS NON READABLE EARLIER RECORDS] THAT NO APPROPRIATE STUDIES WERE DONE FOR THE PATIENT BY ANY OF THE HEALTH CARE PROVIDERS TO MORE FULLY EVALUATE THE STATUS OF THE DIVERTICULITIS.

2.* <u>LATE RED FLAGS AND CRITICAL ALARM BELLS ON 8/28/04 ;</u>
INCREASED TEMP- FEVER; INCR WBC, -NEUTROPHILS,
SIGNIFICANT.WT LOSS. DECR ALBUMIN;
HYPONATREMIA, DEHDRATION.

In his 8/28/04 note Dr. Palumbo also documented his recognition similar to the Naval Center Feb and March 2004 notes that **<u>"diverticulitis "is possible, [ because]"Colonoscopy showed a few left sided diverticula"</u>** <u>[not mentioned in his transcribed January 2004 colonoscopy report].</u>

On 8/31/04 Rhode Island Hospital Abd US
documented "history of intermittent colicky abdominal pain for the past several months. Additional documentation of working diagnosis that <u>Patient has a history of diverticulosis.</u>"

On 9/3/04 Lab results: leukocytosis; increased absolute neutrophils; decr sod; CO2;
On 9/4 wbc=11.9,na=132;cl=89;co2=18;alb=2.9.
ACIDOSIS; LEUKOCYTOSIS; HYPOALBUNINEMIA :
9/3-4/04 Lab Summary:
1. METAB ACIDOSIS.
2.probably SEC TO PROBABLE BOWEL NECROSIS ,
3. I CALCULATE THAT COLONIC PERFORATION OCCURRED ABOUT 10 DAYS PRIOR TO 8/28 ER VISIT=~8/18-21 WHICH WOULD HAVE BEEN CONFIRMED BY TIMELY HOSPITALIZATION; CT SCAN; SURGICAL CONSULT.

*ALL ABOVE SOC WARRANTS IMMEDIATE HOSPITALIZATION WITH SURGICAL CONSULTATION.

INSTEAD
1. NO KUB CT SCAN ON 8/18 TOMLINSON OV

2. NOR EVEN A KUB OR CT SCAN AT RI ER ON 8/28.

3. NO ABG MEAS TO EVALUATE MET ACIDOSIS.

4. DITTO FOR 8/31 KEVIN PALUMBO MD OV

5. NO IMMEDIATE HOSPITALIZATION

IT IS AGAIN INEXPLICABLE THAT WITH A WORKING DIAGNOSIS POSSIBILITY OF DIVERTICULITIS MADE AS EARLY AS 2/19/04[OR EARLIER ON WHAT IS NON READABLE EARLIER RECORDS] THAT NO APPROPRIATE STUDIES &/TREATMENT WAS RENDERED TO THE PATIENT BY ANY OF THE HEALTH CARE PROVIDERS TO EVALUATE THE STATUS OF THE [COMPLICATED] DIVERTICULITIS/[COLON PERFORATION] AFTER FEB 2004; AND NOT EVEN DURING THE 6 MONTHS PRIOR TO AUGUST 2004 AND ESPECIALLY ON 8/28/04 WHEN THIS DIAGNOSIS WAS OBVIOUS EVEN TO A MEDICAL STUDENT.
WITH DEVELOPING OBVIOUS SYMPTOMS AND LAB DATA [9/3-4/04 SUGGESTIVE OF BOWEL NECROSIS THIS PATIENT [MS.MCSORLEY] WAS LEFT TO LINGER AT HOME TO DIE OF SEPSIS ON 9/6/04. THE SEPSIS WAS ASSOCIATED WITH FECAL PERITONITIS FROM AN AS YET UNDIAGNOSED AND UNTREATED COLON PERFORATION FROM A COLON DIVERTICULUM.

**CONCLUSIONS:**

**If not for these DSOCs by her health care providers [Drs. Tomlinson, Fielding; Kevin & Ted Palumbo; & the doctors at Rhode Island ER] the patient would still be alive and well.**

Perforated diverticulitis has a mortality rate of 6 percent for purulent peritonitis and, 35 percent for fecal peritonitis (peritonitis with fecal soilage) as was the case with Ms. McSorley [1-3].
Perforation — Free intraperitoneal rupture of diverticulitis is unusual; however, such patients have high mortality rates of 20 to 30 percent [1-5].
Abscess — Abscesses occur in 16 percent of patients with acute diverticulitis without peritonitis [5-11] and in 31 to 56 percent of those requiring surgery for diverticulitis [11-12].
Percutaneous drainage now permits elective single stage surgery in 60 to 80 percent of patients [6-10];
Furthermore, in selected patients with contraindications to surgery, catheter drainage may be sufficient to relieve symptoms [11-12].

ADDITIONAL REFERENCES

1. Thompson WG, Patel DG. Clinical picture of diverticular disease of the colon. J Clin Gastroenterol 1986;15:903-16.
2. Cheskin LJ, Bohlman, Schuster MM. Diverticular disease in the elderly. Gastroenterol Clin North Am 1990;19:391-403.
3. Detry R, James J, Kartheuser A, et al. Acute localized diverticulitis: optimum management requires accurate staging. Int J Colorectal Dis 1992;7:38-42.
4. Hachigan MP, Honickman S, Eisenstat TE, Rubin RJ, Salvati EP. Computed tomography in the initial management of acute left-sided diverticulitis. Dis Colon Rectum 1992;35:1123-9.
5. Kellum JM, Sugerman HJ, Coppa GF, et al. Randomized prospective comparison of cefoxitin and gentamycin-clindamycin in the treatment of acute colon diverticulitis. Clin Ther 1992;14:376-84.
6. Larson DM, Masters SS, Spiro HM. Medical and surgical therapy in diverticular disease: a comparative study. Gastroenterology 1976;71:734-7.
7. Haglund U, Hellberg R, Johnsen C, Hulten L. Complicated diverticular disease of the sigmoid colon: an analysis of short and long term outcome in 392 patients. Ann Chir Gynaecol 1979;68:41-6.
8. Parks TG, Connell AM. The outcome of 455 patients admitted for treatment of diverticular disease of the colon. Br J Surg 1970;57:775-8.
9. Nichols RL. Management of intra-abdominal sepsis. Am J Med 1986;80:204-9.
10. Drusano GL, Warren JW, Saah AJ, et al. A prospective randomized controlled trial of cefoxitin versus clindamycin-aminoglycoside in mixed anaerobic-aerobic infections. Surg Gynecol Obstet 1982;154:715-20.
11. Hinchey EF, Schaal PG, Richards GK. Treatment of perforated diverticular disease of the colon. Adv Surg 1978;12:85-109.
12. Painter NS. Diverticular disease of the colon: the first of the Western diseases shown to be due to a deficiency of dietary fiber. S Afr Med J 1982;61:1016-20.

# Perry Hookman, M.D., P.A.

5607 NW 24th Terrace · Boca Raton, FL 33496 · Phone (561)241-8550 · Fax (561)241-8554

I, Perry Hookman, M.D., reserve the right to add to or change my report in view of matters which may turn up in discovery.

Perry Hookman, M.D.

# Exhibit H

DEC 31 2007

LOVETT
SCHEFRIN
HARNETT
*Attorneys & Counsellors at Law*

Raul L. Lovett, 1934-1990
Aram R. Schefrin
John M. Harnett*†

Warren R. Wolf
Carl J. Asprinio
Christopher M. Rawson*

*Member Rhode Island and Massachusetts Bar

†Member New York Bar

155 South Main Street
Providence, RI 02903
Tel: 401/863-8800
Fax: 401/863-8938
Mass: 800/451-1602

December 28, 2007

Richard B. Myrus
Assistant U.S. Attorney
U.S. Department of Justice
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

RE: McSorley v. United States, et. al., C.A. No. 07-052ML

Dear Rick:

Thank you for your letter of December 26th.

The "notes" which were sent to you constitute Dr. Hookman's expert report. There is no other expert report. The notes were accompanied by a statement from Dr. Hookman reserving the right to amend his conclusions pending further discovery. The notes extensively outline Dr. Hookman's review of the evidence, and assign that evidence to each opinion expressed. They refer to specific medical records. You have been provided with Dr. Hookman's c.v., which includes his list of publications. We are providing you with his most updated version, along with his schedule of fees, and a list of cases at which he has testified as an expert. Obviously, we do not know what his services are going to cost us at this point. I see no prejudice to you.

Very truly yours,

Aram R. Schefrin

Aram R. Schefrin, Esq.

ARS:jw
Enclosures

cc: Andrew C. Coulam, Esq. ✓
Michael G. Sarli, Esq.
William F. White, Esq.
Seth E. Bowerman, Esq.

# CURRICULUM VITAE
# PERRY HOOKMAN, M.D.

Summer Vacation Residence
9605 Halter Court

Potomac, Maryland 20854
Phone: (301) 983-1890
Fax: (301) 983-8625

Permanent Residence/Office
Private Practice Consultations
5607 N.W. 24th Terrace
Boca Raton, Florida 33496
Phone: (561) 241-8550
Fax: (561) 241-8554

Patients seen at Clinical Office
Faculty Teaching Staff
Mount Sinai Medical Center
Gumenick Ambulatory Bldg.
4300 Alton Rd. Suite G-22
Miami Beach Fl. 33140

## EDUCATION
New York University - B.A. 1950-1954
State University of New York - M.D. (Downstate Medical Center) 1954-1958

## TRAINING
Internship in Medicine - Kings County Hospital, State University of New York, Medical Division, Downstate Medical Center, NYC 1958-1959

Assistant Resident in Medicine - The Johns Hopkins Hospital, Baltimore, Maryland 1959-1961

Junior Fellow in Gastroenterology - The Johns Hopkins Hospital, Baltimore, Maryland1961-1962

Staff Member, Division of Gastroenterology - The Johns Hopkins University Medical Service, of Baltimore City Hospital, Baltimore, Maryland 1962-1964

Senior Fellow in Gastroenterology - The Johns Hopkins Hospital, Baltimore, Maryland 1964-1965

## ADDITIONAL EDUCATION
University of Colorado, Denver, Graduate School of Business Administration (Master of Science in Health Administration). 1986-1988

> The Master of Science degree was earned through a unique computer-assisted Executive Program at the University of Colorado, Denver. The Executive Program is co-sponsored by the Western Network for Education in Health Administration and was designed and taught by faculty from eight major universities in the western United States and Canada.

## CERTIFICATION
A. License Identification Numbers:

National Board of Medical Examiners #39733
Maryland #D05187
Florida #ME0057649

B. Membership:

American Society for Gastrointestinal Endoscopy1968-present
Program Chairman: The Maryland Society of Gastrointestinal Endoscopy. A component State of the American Society of Gastrointestinal Endoscopy, 1992-1993
American Gastroenterology Association,1968- present

C. Diplomate: American Board of Internal Medicine, 1966
Subspecialty Board of Gastroenterology, 1972
Recertified: American Board of Internal Medicine. 1977
American Board of Medical Management, 1989

D. Fellow: American College of Gastroenterology 1966
Governor of the Mid-Atlantic Region 1979-1987
American College of Physicians 1969
American College of Physicians Executives 1992
American Gastroenterology Association 2006
American Society for Gastrointestinal Endoscopy 2007.

PROFESSIONAL POSITIONS

CURRENTLY:

Clinical Consultative Practice of Internal Medicine and Gastroenterology in Florida, 1997 to Present
Mt. Sinai Medical Center. Miami Fl. Teaching Staff, Gastroenterology Out-Patient Clinic, 1997 to Present.

PREVIOUSLY:

Director of Gastroenterology Clinics and Associate Director of the Outpatient Division, District of Columbia General Hospital, Washington, D.C. 1965-1968

Clinical Consultative Practice of Internal Medicine and Gastroenterology in Maryland,1968-1997

Director, Division of Gastroenterology, The Prince George's General Hospital and Medical Center, Cheverly, Maryland 1968-1978

Director of Medical Education, The Prince George's General Hospital and Medical Center, Cheverly, Maryland 1971-1974

Vice President for Professional Education and Academic Affairs, The Prince George's General Hospital and Medical Center, Cheverly, Maryland 1974-1977

Acting Director and Vice President for Professional Services, The Prince George's General Hospital and Medical Center, Cheverly,Maryland 1972-1974

Member, Board of Directors, The Prince George's County Medical Society Foundation for Medical Care, 1972-1976

Chairman, Board of Directors and Chief Executive Officer of the Potomac Village Medical Center Ambulatory Care Center, 1980-1986

Chairman, Board of Directors, The Prince George's Ambulatory Care Center/Endoscopy Suites, Inc. Ambulatory Surgery Center. Obtained HCFA Certification, May 1988. JCAHO Certification, Oct.1991.1987-1992

Medical Quality Assurance, Medical Malpractice & Medical Ethics Committee Appointments.

Chairman, Peer Review Committee, The Prince George's County Medical Society, 1972-1977

Chairman, Task Force on Hospital and Healthcare Evaluation of Prince George's County, Maryland. Appointed by the elected Prince George's County Executive, 1978-1980

American College of Physicians, Governor's Committee for the District of Columbia, 1983-1984
Consultant, Utilization Review, Delaware/Maryland/Virginia Professional Review Organization (Delmarva PRO) 1989-1992

Arbitrator: Medical Malpractice Cases in Maryland-Health Claims Arbitrator Board, State of Maryland 1987-1993

Chairman, Third Party Liaison Committee, Prince George's County Medical Society, 1990-1993
Member: Ethics Committee, The Palm Beach County Medical Society, [1100 Member Private Practice Physician Organization], Appointed 2003 – 2006; Reappointed 2006 - Present

Chairman: Society of Professionals In Dispute Resolution, Panel on Medical Malpractice Mediation, 25th Annual International Conference, Orlando Florida 9/26/97

Appointments to Peer Review Panels for Medical Publications:

Editorial Board: Journal of American Association for Hospital Medical Foundation, 1974-1979
Editorial Board: Montgomery Medicine, Journal of the Montgomery Medical Society, 1991-1994
Editorial Board: Maryland Medical Journal . Official Journal of the Maryland Medical Society, 1997-1999
World Literature Review. The American Journal of Gastroenterology. Official Journal of the American College of Gastroenterology. 2000-2002
Gastrointestinal Endoscopy. Official Journal of the American Society of Gastro-intestinal Endoscopy.2002 - present
Publisher/Editor: Medical Standard of Care Newsletter. 1999 – 2003
The Annals of Internal Medicine, Appointed 1999 -present

BOOKS & REVIEWS
Oxford Handbook of Gastroenterology and Hepatology: Review. Perry Hookman MD, Gastroenterology September, 2007.
Medical Malpractice Expert Witnessing: Introductory Guide for Physicians & Medical Professionals. Perry Hookman MD. CRC Press. 2007. ISBN-13:978-1-4200-5895-6.

ACADEMIC AND FACULTY APPOINTMENTS
Assistant Clinical Professor of Medicine, George Washington University School of Medicine, 1965-1969
Associate Dean of Post Graduate Education Programs (PGGH.), The Johns Hopkins University School of Medicine, 1969 - 1974
Adjunct Assistant Professor of Medicine, the Johns Hopkins University School of Medicine, Baltimore, Maryland 1974-1978
Coordinator of Post Graduate Education, The Johns Hopkins University School of Medicine, Baltimore, Maryland 1976-1978
Vol. Teaching Staff Mt. Sinai Medical Center, Miami, Florida, 1995 - Present.
Vol. Assistant Professor of Clinical Medicine, University of Miami School of Medicine, Miami, Florida, 1998-2003.
Promoted to Voluntary Associate Professor of Clinical Medicine, University of Miami School of Medicine, Miami, Florida, 2003-Present.

AWARDS

ORDER OF THE KNIGHTS OF ST. ANDREW of the GREEK ORTHODOX CHURCH
Knighted by Archbishop Iakovos of the Greek Orthodox Church of North and South America for PROMOTION OF INTER-RELIGIOUS ACTIVITIES, 1972

Prince George's County Health & Welfare Council
"ANNUAL AWARD TO A PHYSICIAN FOR EXCELLENCE IN COMMUNITY SERVICES AND IN RECOGNITION FOR A MAJOR CONTRIBUTION FOR SIGNIFICANT IMPROVEMENT IN THE QUALITY OF HEALTH CARE IN PRINCE GEORGE'S COUNTY, MARYLAND," 1974

Physician of the Year Medal
FOR MAJOR CONTRIBUTIONS IN THE FIELD OF EDUCATION OF THE FOREIGN MEDICAL GRADUATE IN THE UNITED STATES, Awarded by the Philippine Medical Association of the U.S.A., 1976

Annual Award of Merit:
United Jewish Appeal Federation of Greater Washington; FOR OUTSTANDING ACHIEVEMENT AND SERVICE TO THE JEWISH COMMUNITY, 1980

Certificate of Appreciation to Perry Hookman, M.D.
Prince George's County Medical Society: FOR EXEMPLARY SERVICE AS CHAIRMAN OF THE AD-HOC PREFERRED PROVIDER COMMITTEE OF THE PRINCE GEORGE'S COUNTY MEDICAL SOCIETY, 1983

Certificate of Appreciation to Perry Hookman, M.D.
Prince George's Medical Society: FOR EXCELLENCE IN SERVICE- CHAIRMAN OF THE THIRD PARTY LIASON COMMITTEE, 1992

Proclamation by Parris N. Glendening, County Executive for Prince George's County
"COMMENDATION TO PERRY HOOKMAN, M.D. FOR OUTSTANDING DEDICATION TO OUR COMMUNITY OF PRINCE GEORGE'S COUNTY, MARYLAND," 1992

Senate of Maryland Resolution SR-1255
"IN RECOGNITION OF THE CONTRIBUTIONS OF PERRY HOOKMAN, M.D. TO THE STATE OF MARYLAND," 1992

Prince George's County Council Proclamation to Perry Hookman, M.D.
"FOR HIS MANY COMMUNITY SPIRITED EFFORTS IN THE MEDICAL CARE OF THE COUNTY," 1992

Lamplighter Annual Award,
"IN RECOGNITION TO PERRY HOOKMAN, M.D. FOR HIS COMMUNITY LEADERSHIP AND DEVOTED HUMANITARIAN EFFORTS," by the Friends of Lubavitch, Maryland/Washington, D.C Capitol Area, 1992

American Gastroenterology Association Fellowship to the highest level of AGA membership. "AWARDED FOR OUTSTANDING CONTRIBUTIONS TO THE FIELD OF GASTROENTEROLOGY & SUPERIOR PROFESSIONAL ACHIEVEMENTS IN CLINICAL PRACTICE & RESEARCH" 2006.

BIBLIOGRAPHY: CLINICAL PUBLICATIONS


1. Failure of Oxethazaine to Alter Acid Induced Symptoms in Patients with Esophagitis. C.I. Siegel MD, P. Hookman MD, T.R. Hendrix MD. Clinical Research 11:188, 1963 abst.

2. Abnormal Anal Sphincteric Reflex in Patients with Scleroderma. Marvin M. Schuster MD, Perry Hookman MD, Donald D. Tow MD, and Albert I. Mendeloff MD. Journal of Clinical Investigation, 421:976, 1963

3. Dysphagia Localized to the Hypopharynx and Upper Esophagus: A Cineradiographic and Manometric Study, C.I. Siegel MD, J.C. Harvey MD, P.Hookman MD, A.I. Mendeloff MD, T.R. Hendrix MD, D. Moore MD, Annals of Internal Medicine 58:725, 1963 abst.

4. The Relationship of Raynaud's Phenomenon to Aperistalsis of the Esophagus, Perry Hookman MD, Mary B. Stevens MD, Charles E. Siegel MD, John R. Esterly MD, and Thomas R. Hendrix MD. Gastroenterology, 44:833,1963, abst.

5. Aperistalsis of the Esophagus in Patients with Connective Tissue Disorders and Raynaud's Phenomenon. Mary Betty Stevens MD, Perry Hookman MD, Charles I. Siegel MD, John R. Esterly MD, Lawrence E. Schulman MD, and Thomas R. Hendrix MD, New England Journal of Medicine, 270:1218, 1964

6. Sphincter Abnormality in Hyperthyroidism. J. Alva MD, P. Hookman MD, A.I. Mendeloff MD, Clinical Research,3:254, 1965 abst.

7. Acid Induced Esophageal Motor Abnormalities: A Cine-Manometric Study . Perry Hookman MD, Martin L. Silbiger MD, Martin W. Donner MD, and Thomas R. Hendrix MD, Gastroenterology 48:822, 1965 abst.

8. Simultaneous Manometric Recording of Internal and External Anal Sphincteric Reflexes, Marvin M. Schuster MD, Perry Hookman MD, Thomas R. Hendrix MD and Albert I. Mendeloff MD. Bulletin of the Johns Hopkins Hospital 16:79, 1965

9. A Comparison of Endoscopic Biopsy and Esophageal Exfoliative Cytology in Establishing the Diagnosis of Carcinoma of the Esophagus. Perry Hookman MD, Gastrointestinal Endoscopy 12:29, 1966

10. Acid Barium Swallows in the Radiographic Evaluation of Clinical Esophagitis, Martin W. Donner MD, Martin L. Silbiger MD, Perry Hookman MD, and Thomas R. Hendrix MD. Radiology 87:220, 1966

11. Failure of Oxethazaine to Alter Acid Induced Esophageal Pain. Perry Hookman MD, Charles Seigel MD, and Thomas R. Hendrix MD, American Journal of Digestive Diseases 11:811, 1966

12. Relationship of Altered Esophageal Primary Peristalsis to Acid Induced Pain: A Manometric Study. Perry Hookman MD, Gastroenterology 52:1095, 1967 abst..

13. Acid Induced Prolonged Relaxation of Lower Esophageal Sphincter. Perry Hookman MD, Clinical Research, 15:235, 1967 abst.

14. Upper G.I. Symptoms: Also Consider the Collagen Diseases. Perry Hookman MD, Consultant June 1968

15. How to Identify the Troublesome Hiatal Hernia. Perry Hookman MD, Consultant, Feb1969

16. New Techniques for Accurate Diagnosis and Management of Hiatal Hernia and Gastroesophageal Reflux. Perry Hookman MD, Medical Annals of the District of Columbia, 38:243, 1969

17. Hiatal Hernia Evaluation, Perry Hookman MD, Consultant, May 1969

18. Reserpine in Raynaud's Disease and Phenomenon. Short Term Responses to Intra-arterial Injection. James T. Willerson MD, Ronald H. Thompson MD, Perry Hookman MD, Jean Herdt MD, and John L. Decker MD, Annals of Internal Medicine, 1:17 1970

19. G.I. Manifestation of collagen Disease, Perry Hookman MD, Consultant, January 1973

20. Editorial: Crisis in Medical Education—1975, Perry Hookman, M.D., Bulletin of the Association of Hospital Medical Education, March 1976

21. Choledochocolonic Fistula Through a Cystic Duct Remnant, V.P. Chandar MD, Perry Hookman MD. American Journal of Gastroenterology, 74:179-181, 1980

22. Fundamentals of Internal Medicine - Book Review, Perry Hookman MD, Annals of Internal Medicine, 99:3, p.426, 1983

23. Affiliation with an Academic Medical Center I,Perry Hookman MD, Hosp.Topics,62:2, 1984

24. Affiliation with an Academic Medical Center II, Perry Hookman MD, Hosp.Topics,62:2, 1984

25. Gallbladder Carcinoma with Gastric Outlet Obstruction and Gallstone Ileus. Maximo Singer, M.D., V.P. Chandar, M.D., and Perry Hookman, M.D. Journal of the South Med Assoc,79:7July, 1986

26. Age & Gender and Type of Procedure are Independent Predictors of Arterial Oxygen Desaturation During Ambulatory Endoscopy. Perry Hookman MD, V.P. Chandar MD, A. Kenigsberg MD, M. Moran M D, M. Mondino MD, M.Thomas MD, and Robert Hirsch MD. American Journal of Gastroenterology, 86:1371, September, 1991 abst.

27. Arterial Oxygen Desaturation during Ambulatory Endoscopy occurs without EKG changes. Perry Hookman MD, V.P. Chandar MD, A. Kenigsberg MD, M. Moran MD, M. Mondino MD, M. Thomas MD, and Robert Hirsch MD, Gastrointestinal Endoscopy, 38:283, March/April, 1992 abst.

28. History of Medicine:Sir William Osler - Alias Egerton Yorrick Davis: Tall Tales Told Convincingly. Perry Hookman MD, Montgomery Medicine, March 1992 p. 19-22

29. Practice Guidelines: The Second Generation of Utilization Review: How to Make it Work for the Health Service Organization, Perry Hookman MD, Perspectives in Medical Management '92: Published by the American College of Physician Executives. May 1992 p.145-146. ISBN: 0-924674-16-4

30. Pro-Active Feedback Loops in the Management of Clerical and Clinical Personnel of a Medical Group Practice, Perry Hookman MD, Perspectives in Medical Management '92; Published by the American College of Physician Executives. May 1992 p.19-22. ISBN: 0-924674-16-4

31. Establishing a Successful Performance Appraisal System for Health Services Organization Personnel, Perry Hookman MD, Perspectives in Medical Management '92; Published by the American College of Physician Executives. May 1992 p.43-144. ISBN: 0-924674-16-4

32. An Outline of Possible New Anti-Managed Care Legislation in Maryland, Perry Hookman MD, The Legislative and Regulatory Climate for Managed Care, American Managed Care and Review Association's Health Policy Forum, May 1992 p.40

33. Checklist used to justify Endoscopy problems. Models for Cost Management and Health Care Quality: Perry Hookman MD, Innovations '92; Publication of the American College of Physician Executives, Promocom Printing, Inc., Pinellas Park,Florida. May 1992. ISBN: 0-924674-1

34. Sir William Osler - Contrasts Between the Saint-like Legend and the Rough-edged Man, Perry Hookman MD, Maryland Medical Journal, Volume 41 No.11. November 1992, p.997-1004

35. Signs of the Times: Anti-Managed Care Legislation Possibilities, Perry Hookman MD, Physicians Practice Digest - Maryland, Volume 3, No.4. Fall 1992 p.30-35

36. Sir William Osler and the Current Trajectory of Medical Education and Health Care at American Academic Health Centers, Perry Hookman MD, Md Med Journal, Vol.43,No.7July 1994 p.69-573

37. A Comparison of the Writings of Sir William Osler and His Exemplar Sir Thomas Browne, Perry Hookman, Bulletin of the New York Academy of Medicine.Volume72.No1,July 1997,p.1-16

38. Pancreatic sphincter hypertension increases the risk of post-ERCP Pancreatitis: Perry Hookman MD, Jamie Barkin MD, Gastrointestinal Endoscopy. Volume 48 No. 5, November 1998 p.546-547

39. The Role of Vigorous Detection of Recurrence after Curative Resection of Colorectal Cancer, Perry Hookman MD, Jamie S. Barkin MD, The American Journal of Gastroenterology. Volume 93,No.12,December 1998, p.2624-2627

40. The Diagnosis and Management of Unexplained Chest Pain – Is Less More? Perry Hookman MD, Jamie S. Barkin MD, The American Journal of Gastroenterology. Volume 94, No. 8 August 1999, p.2310-2313

41. Maryland Medical History: Was William Osler Responsible for Gertrude Stein's Failure to Graduate from the Johns Hopkins University School of Medicine? W.J. Hookman MD, Perry Hookman MD, Md Medical Journal Volume 48, No. 5,September/October,1999,p.220-227

42. Diagnosis of Acute Right Lower Quadrant Pain and Appendicitis by CT Scan: Do We Still Need the Clinician? Perry Hookman MD, Jamie S. Barkin MD, The American Journal of Gastroenterology. Volume 95,Number 5, May 2000, p.1355-1357

43. Surgical complications of Fundoplication for Gastro Esophageal Reflux Disease: Perry Hookman MD, Jamie Barkin MD, The American Journal of Gastroenterology. November 2000; Volume 95 Number11,p. 3305-3307.

44. Laparoscopic Cholecystectomy Should Be Routinely Performed with Intraoperative Cholangiography. Perry Hookman MD, Stephen Unger MD, Jamie Barkin MD. The American Journal of Gastroenterology. Volume 95, Number 11, November, 2000, p.3299-3305.

45. Early Diagnosis and Treatment of Hepatitis C (HCV). Richard Philips MD, Perry Hookman MD, J.Barkin MD. The American J of Gastroenterology.95(9).Sept,2000. Abst.p.2597

46. What should be the Standard of Care for the Surveillance of Cancer, the Diagnosis of Dysplasia, and the Decision for Colectomy in Chronic Inflammatory Bowel Disease. Perry Hookman MD, Jamie Barkin MD, The American Journal of Gastroenterology. Volume 97, No 9 May 2002 p.1249 -1255.

47. Recommendations for Greater Accuracy in the Standard of Care for the Detection of Early Barrett's Esophageal Cancer. Perry Hookman MD, Jamie Barkin MD, The American Journal of Gastroenterology. Volume 97, No 9 May 2002 p.1246 – 1249

48. Systemic Autoimmune Disorders Associated With Celiac Disease (CD) A Case Report. Jason A. Slate MD, Perry Hookman MD, Richard S. Philips MD, and Jamie Barkin MD. The American Journal of Gastroenterology. Volume 97, No.9, Suppl. September, 2002 p.136-137.

49. Current Biochemical Studies of Non- Alcoholic Fatty Liver Disease (NAFLD) and Non Alcoholic Steatohepatitis (NASH) Suggests a New Therapeutic Approach. Perry Hookman MD, Jamie Barkin MD, The American Journal of Gastroenterology. Volume 98, No.2, February, 2003; p.495 – 499. Published also in The American Journal of Gastroenterology.Vol.98, No.9,Sept, 2003; p.2093 – 2096.

50. Update on Current Standards of Care in the Diagnosis and Management of Non-Alcoholic Fatty Liver Disease (NAFLD) and Non-Alcoholic Steatohepatitis (NASH), Perry Hookman, M.D., Jamie Barkin, M.D.Practical Gastroenterology,Vol.38(9)p.70-88, Sept, 2004; Part I, Diagnosis:

51. Update on Current Standards of Care in the Diagnosis and Management of Non-Alcoholic Fatty Liver Disease (NAFLD) and Non-Alcoholic Steatohepatitis (NASH),Perry Hookman, M.D., Jamie Barkin, M.D., Practical Gastroenterology,10/2004,Vol 38(10)p.82-90. Part II Medical Therapy

52. Update on the Causes and Standards of Care for the Diagnosis and Treatment of Hepatocellular Carcinoma. N. Pyrsopoulos MD, Perry Hookman MD, Jamie Barkin MD, Practical Gastroenterology April 2005, Vol 29,#4, p.98 - 116

53. Systemic Autoimmune Disorders Associated with Celiac Disease. Jason Slate MD., Perry Hookman MD., Jamie Barkin MD, Digestive Disease &Science.; Sept. 2005; 50(9):1705-7.

54. Post- Cholecystectomy Recurrent Acute Pancreatitis Secondary to Sump Syndrome .V.Cabon MD, Perry Hookman MD. Jamie Barkin MD., The American Journal of Gastroenterology.Sept.2005; 100 (8) Abst. p.S 236

55. Guidelines for Prevention, Surveillance, Diagnosis, & Treatment, and, in this New Era of More Virulent Strains of Antibiotic Associated Diarrhea (AAD),C. Difficile associated Diseases/Diarrhea [CDAD] and C.Difficile Colitis [CDAC] Perry Hookman, M.D., Jamie Barkin, M.D. Practical Gastroenterology June; 2006 p.65

56. C. Difficile Associated Disorders/Diarrhea (CDAD) and C.Difficile Colitis (CDAC): The Emergence of a More Virulent Era. Perry Hookman MD., Jamie Barkin MD Digestive Diseases & Sciences. vol.52, no.3, [online]-March, 2007; Print edition vol.52,no.4:1071-1075, ISSN 0163-2116.

Updtd. 12.07.07

Perry Hookman MD, FACG, FACP, FACPE, AGAF, FASGE

*+Underlined = Cases retained by the attorney for the Defendant

**Chronology of Depositions [D] and Trial Testimony [T] from Jan.1, 2000 to Dec. 9, 2007**

*Jensen v. Sawyers 03/27/00 - D
Moore v. Watson 05/10/00 - D
Falls v. Endacott 08/30/00 - D
Wilson v. Madison Health Care 03/08/01 -D; 11/28/01 – T [Charleston W.Va].
Milen v. Columbus Hospital 08/21/02 – D
Shipley v. Ahmed 10/03/02 – D
Meredith v.Health Care Corp. of America 10/18/02– D 10/29/02-T [Clarksburg W.Va.]
Huff v. Gaing 01/10/03 – D
Williams v. Pasadena Bayshore Hospital 03/03/03 – D
Hollyfield v. St.Elizabeth Hosp. 11/10/03 –D; 8/19/04 –Video.T
Sparks v. Parr 12/15/03 - D
Tassin v. Gagic 03/11/04 – D; 03/12/04 – Video.T .
*Alper, v. The Jewish Hospital,& J. Loughery MD,& T.Traiforos MD. 07/13/04–D 08/12/04-Video.T.
*Crosby v. St. Louis Connect Care Medical Group & Damon Clines MD 01/7/05 – D
Sanders v. Affinity Medical Group. 02/18/05 – D
*Frogge v. Foust 07/29/05 – D
Slinker v. Johnson Memorial Hosp. 09/13/05 part I – D; 03/06/06 part II - D
*Ales v. Mayo Clinic, P. Fitzpatric MD & Gastroenterology group 10/03/05- D
Barrese v. Soundview Medical Assoc 11/08/05-D; 05/11/06 – Video.T
Jervier v. Florida Hospital & T.Thakkar MD 11/15/05-D; 7/11/06 -T [Sebring Fl.]
Carolus v. Rockwood Clinic 02/28/06-D
Sanders v. Univ.Mississippi Med.Center et al 05/30/06 - Video.T
Wilson v. I. Raijman MD 06/14/06 - Video.T
*McCoy v. Med.Univ.of S.C.[MUSC]&M.DeLegge MD,& Gastro Grp. 08/09/06 -D
*Bloom v. M. Campa MD & Costa Crociere 10/23/06 –Video. D
Varnadore v. J.Bott MD et al. 03/22/07 - Video. D
Baker v. R.Rankin MD 11/06/07 - D
Cox v. R.Stoltz MD 12/10/07 - D

Unless indicated by [other city], all testimony was given at my location.
I have never been disqualified from rendering an expert opinion in any court of law.

Compiled (12/11/07)

## EXPERT FEE COMPENSATION FOR PERRY HOOKMAN, MD.

RE: McSorley v. United States, et. al., C.A. No. 07-052ML

| TASK | FEE |
|---|---|
| Medical written reports, affidavits, conferences, transcript review and research, personal and/or telephone interview with attorney, client or others related to case, research by physician | $375.00/hr. |
| Telephone deposition testimony | $375.00/hr. |
| Personal appearance at in-town deposition | $600.00/hr. |
| In-town videotape deposition, or in-town live video-conference deposition | $600.00/hr. |
| Attendance at court and/or video center for trial testimony | $600.00/hr. |
| Travel and reimbursement for out-of-pocket physician expenses | 100% |